In re Lajunta MONROE, Debtor.

No. 02–04187–PHX–RJH.

United States Bankruptcy Court,
D. Arizona.

Aug. 8, 2002.

Christopher R. Kaup, Tiffany & Bosco, P.A., Phoenix, AZ, for Debtor.

Lyndon B. Steimel, Law Office of Lyndon B. Steimel, Scottsdale, AZ, for James Gagan.

## OPINION

RANDOLPH J. HAINES, Bankruptcy Judge.

James Gagan ("Gagan") moved to dismiss LaJunta Monroe's ("Mrs. Monroe") Chapter 13 bankruptcy case because her debts exceed the limitations of 11 U.S.C. § 109(e).[1] The Court agrees.

### Background Facts

The following facts are undisputed.

Gagan invested in Mr. Monroe's cable television limited partnership. The failure of the partnership led to Gagan's suit against Mr. Monroe asserting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The United States District Court for the Northern District of Indiana entered a judgment for Gagan, an Indiana resident, against Mr. Monroe, an Arizona resident, in the amount of $1,710,000 with 5.31% post-judgment interest. The Seventh Circuit affirmed the District Court's decision in its entirety. *Gagan v. American Cablevision, Inc.*, 77 F.3d 951 (7th Cir.1996).

Gagan's inability to collect on the judgment led him to file a Motion to Compel Judgment Debtors to Apply Assets to Payment of the Judgment in the Indiana District Court. Gagan requested that the court order Mr. Monroe to turnover 100% of his ownership interest in Apache Cablevision ("ACV") to satisfy the judgment. The Indiana District Court granted Gagan's motion, ordering Mr. Monroe to turn over either 100% of his ownership interest in ACV, or a lesser percentage if it would satisfy the debt in full. Although Mr. Monroe had previously transferred 50% of his ownership interest to Mrs. Monroe, the court declared the transfer to his wife void for fraud.

Mr. Monroe also argued that his interest in ACV was community property held by the marital estate, and that Gagan could not enforce his judgment against the community because Mrs. Monroe was not named in the underlying lawsuit, asserting Arizona Revised Statutes ("A.R.S.") § 25–215(d) (West 2002): "[E]ither spouse may contract debts and otherwise act for the benefit of the community. In an action on such a debt or obligation the *spouses shall be sued jointly* and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation." (emphasis added).

The Indiana District Court rejected Mr. Monroe's community property argument for several reasons. First, it recognized the modern trend in Arizona law relaxing the spousal joinder requirement when enforcing judgments of sister states. Second, the court held that an Arizona procedural rule cannot be enforced against a foreign judgment, especially if it would extinguish a federal right (*i.e.* the right of a person injured by a RICO violation to complete recovery under federal law). Furthermore, the court questioned the applicability of a state procedural rule to a federal judgment. Third, the court cited *Oyakawa* to preclude Arizona, pursuant to the full faith a credit clause, from denying recovery of community property for failure to join both spouses. *Oyakawa v. Gillett*, 175 Ariz. 226, 854 P.2d 1212 (Ariz.Ct.App. 1993). Finally, the court rejected the Monroes' claim that Mrs. Monroe was denied her due process rights, holding that due process does not require joinder of

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. § 101–1330.

both spouses for a judgment against the community.

Mr. Monroe appealed the Indiana District Court's turnover order to the Seventh Circuit Court of Appeals. While the appeal was pending, Gagan filed a writ of garnishment on Bank of America in Arizona to obtain funds held in the Monroes' joint bank accounts. Mr. Monroe objected that the Indiana judgment was against him individually, not against Mrs. Monroe or their marital community, so joint bank accounts held as community property could not be used to satisfy the judgment. The Arizona District Court rejected Mr. Monroe's argument and ordered Bank of America to turn over the proceeds of the Monroes' joint accounts.

The Seventh Circuit affirmed the Indiana District Court's turnover order. *Gagan v. Monroe*, 269 F.3d 871 (7th Cir. 2001). The Seventh Circuit held that Mr. Monroe's transfer of half his interest in ACV to Mrs. Monroe was immaterial because Mr. Monroe acquired the interest during his marriage, so the interest was liable for community debts regardless of whether it was in Mr. or Mrs. Monroe's name. *Id.* at 874; A.R.S. § 25–211. Under Arizona law, "[t]he community property is liable for a spouse's debts incurred outside of this state during the marriage which would have been community debts if incurred in this state." A.R.S. § 25–215(C). The court agreed that it was not necessary for Gagan to sue both spouses jointly because the Arizona statute requiring joinder of both spouses in an action involving Arizona community property was a procedural rule with no relevance outside of the state. *Gagan*, 269 F.3d at 876. Mrs. Monroe's due process rights were not violated by ordering Mr. Monroe to turn over community property because under Arizona law, either spouse may dispose of the community's property without the oth-

er spouse's consent, subject to some exceptions not applicable in this case. *Id.* at 877; A.R.S. § 25–215(D). Furthermore, the court held that since Mr. Monroe's actions enriched the community, it was a community debt. *Gagan*, 269 F.3d at 874 (citing *Selby v. Savard*, 134 Ariz. 222, 655 P.2d 342, 349 (1982)) ("The Arizona rule is that the community is liable for the intentional torts of either spouse if the tortious act was committed with the intent to benefit the community, regardless of whether in fact the community receives any benefit."). The court also emphasized that in Indiana, it would have been impossible for Gagan to join Mrs. Monroe in the suit because there were no allegations that she ever violated any RICO laws. *Gagan*, 269 F.3d at 876.

Mr. Monroe did not join in his wife's Chapter 13 bankruptcy petition. Mrs. Monroe's Schedule F lists approximately $1,150,00 in unsecured debt, including $1,000,000 identified as a contingent, unliquidated, disputed debt owed to Gagan.

## Legal Analysis

Bankruptcy Code § 109(e) makes Chapter 13 relief available only to "an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $290,525 and noncontingent, liquidated, secured debts of less than $871,550." The issue here is whether Gagan's judgment against the non-debtor spouse, which has been held to be a community debt, qualifies as a debt owed by the debtor spouse for purposes of the filing spouse's Chapter 13 debt limitation.

### Community Debt Counts as a Debt of Both Spouses

■ A debt is defined as "liability on a claim." § 101(12). A claim is a "right to payment, whether or not such right is reduced to judgment." § 101(5)(A). The Supreme Court in *Davenport* and *Johnson*

held that the meanings of "debt" and "claim" are coextensive. *Johnson v. Home State Bank*, 501 U.S. 78, 85 n. 5, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

A community claim is a claim "that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable." § 101(7). Such property includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is-(A) under the sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse." § 541(a)(2). Because these provisions are generally satisfied with respect to Arizona community property, "the community property of both spouses becomes property of the estate when one spouse files a bankruptcy petition." *In re Maynard*, 264 B.R. 209, 214 (9th Cir. BAP 2001) (citation omitted).

As noted above, both the Seventh Circuit and Arizona District Judge Broomfield held that the Monroes' community property is liable for Gagan's judgment, which is therefore a community claim. The issue is whether community debts must come into the filing spouse's Chapter 13 bankruptcy debt calculation.

It could be argued that a community debt, which is not a separate obligation of the debtor, textually does not fit the definition of § 109(e) because the debtor is not "an individual ... that owes [such] ... debts." § 109(e). Since Gagan's judgment is against Mr. Monroe, Mrs. Monroe does not individually owe the debt. However, Gagan's claim is a community claim be-

cause he has a right to payment that is payable out of property of the kind specified in § 541(a)(2) because the Monroes' interest in ACV is under the joint management of Mrs. Monroe. Under A.R.S. § 25–214(B), both "spouses have equal management, control and disposition rights over their community property and have equal power to bind the community,"and the Seventh Circuit held that the ACV stock is community property.

Although Mrs. Monroe's separate property is not liable for the debt, her interest in the community property is. Because Mrs. Monroe is an individual of the community and the community owes the debt, she is an individual that owes a debt, within the meaning of § 109(e). By the rationale of *Johnson*, she is an individual who owes that debt because regardless of her personal liability, it is payable out of her property, *i.e.*, her interest in community property. *Johnson* held that a debt secured by a debtor's property is a claim that may be dealt with in a Chapter 13 plan, even though the debtor had no personal liability on the debt. "[A] creditor who ... has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code." 501 U.S. at 85, 111 S.Ct. 2150. Because "debt" "has a meaning coextensive with that of 'claim,' " *id.*, n. 5, 111 S.Ct. 2150, such a "claim against the debtor" must also be deemed a "debt" of the debtor, for purpose of § 109(e).

This result makes good sense in light of the structure and purposes of Chapter 13. After all, the community debt to Gagan is subject to being treated in Mrs. Monroe's Chapter 13 plan and ultimately discharged, even though Mrs. Monroe is the only debtor here and she is not individually liable for that debt. This is because community claims such as Gagan's would have to be paid from community property pursuant to

§ 726(c)(2)(A) and/or (B), and because § 1325(a)(4) requires each claimant to be paid at least as much as would be distributed pursuant to that Chapter 7 provision. Indeed, that is precisely the strategy of debtors such as these, who seek to obtain a discharge of community debts even though only one spouse files.

It is true that not all debts that are dischargeable in a Chapter 13 case count toward the eligibility requirements because, for example, contingent and unliquidated debts are potentially dischargeable even though expressly excluded from the eligibility criteria. As to noncontingent, liquidated claims, however, the observation of the leading Chapter 13 treatise seems sound: "It is not obvious that any good policy is served by inconsistent rules for eligibility and confirmation in this context." I Keith M. Lundin, *Chapter 13 Bankruptcy* § 18.1, at 18–4 (3d ed.2000).

## Gagan's Claim Is Liquidated and Noncontingent

■ Mrs. Monroe listed Gagan's judgment as disputed, contingent, and unliquidated in her Chapter 13 schedules. "[A] debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." *Nicholes v. Johnny Appleseed of Wash. (In re Nicholes),* 184 B.R. 82, 88 (9th Cir. BAP 1995). The Monroes' debt is noncontingent because all of the events occurred several years prior to Mrs. Monroe filing her Chapter 13 bankruptcy petition and the Indiana District Court entered a judgment against Mr. Monroe in 1994.

■ A debt that is readily ascertainable is liquidated. *Ho v. Dowell (In re Ho),* 274 B.R. 867, 873 (9th Cir. BAP 2002). The Monroes' debt is readily ascertainable because a jury already heard the case, determined the award amount, and was affirmed on appeal by the Seventh Circuit.

Although Mrs. Monroe disputes Gagan's claim, it is nonetheless a noncontingent, liquidated debt. *Id.* The claim's disputed status does not exclude it from Mrs. Monroe's § 109(e) debt limit calculation.

## Alternatively the Judicial Turnover Order Created a Judicial Lien or Secured Interest

■ An alternative issue is whether the Indiana District Court's order for Mr. Monroe to turnover his interest in ACV created a judicial lien or secured interest possessed by Gagan. If it is, then it falls within § 109(e) by the holding in *Johnson.*

A lien is a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37). A judicial lien is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(36). In *Farrey v. Sanderfoot,* the state court ordered the former husband to pay the former wife approximately $30,000 in a divorce proceeding to achieve an equitable distribution of assets. *Farrey v. Sanderfoot (In re Sanderfoot),* 899 F.2d 598, 599 (7th Cir.1990), *rev'd on other grounds,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) (Supreme Court addressed and reversed only on the issue of whether § 522(f)(1) allowed the former husband to avoid the fixing of a lien on a property interest obtained in a divorce decree, and did not address the issue of whether the former wife's lien was a judicial lien). To secure the debt, the state court gave the former wife a lien against the home that was awarded to the former husband, which would remain attached until he paid the debt in full. 899 F.2d at 599. Applying the statute language of § 101(32), the court concluded that the former wife's lien, granted by the divorce court, was acquired by legal proceedings,

and therefore was a judicial lien. *Id.* at 604–05.

Similar to the former wife in *Farrey*, Gagan acquired a turnover order from the Indiana District Court by legal proceedings. The court order for Mr. Monroe to turn over his interest in ACV is in essence a judicial lien because it was obtained by a judgment and is a charge against the property "to secure payment of a debt." §§ 101(36) and 101(37). "Bankruptcy courts have consistently interpreted the phrase 'secured debts,' as appearing in [11 U.S.C.] § 109(e), to signify a debt to which collateral has been assigned as security." *In re Gorman,* 58 B.R. 372, 374 (Bankr. E.D.N.Y.1986). In *Farrey*, the judicial lien created a security interest evidenced by the language in the opinion "[t]o secure this debt, the court awarded Ms. Farrey a lien." *Farrey,* 899 F.2d at 599[2]. In the Monroes' case, the judicial turnover order created a secured claim because Mr. Monroe's interest in ACV was subject to court order to satisfy the judgment.

However, this Court need not determine whether Gagan's claim is secured or unsecured because the result is the same either way. Classifying the $1,700,000 debt as either secured or unsecured would result in an amount in excess of both of the debt limitations of § 109(e): $290,525 unsecured or $871,550 secured.

### Conclusion

Gagan's judgment against Mr. Monroe is a claim against the community for which the Monroes' community property is obligated. It is therefore a debt that must be included in the debt calculation of the fil-ing spouse for purposes of § 109(e). Mrs. Monroe is not eligible for Chapter 13 relief because her debts, which include the debts of the community, exceed the limitations proscribed by § 109(e) of the Bankruptcy Code.

A separate judgment for dismissal will be entered to the effect that dismissal will be effective 10 days after entry of the judgment unless prior to that time the Debtor files a notice of or motion for conversion. *See Hammers v. Internal Revenue Serv. (In re Hammers),* 988 F.2d 32, 34–35 (5th Cir.1993). If the notice is of conversion to Chapter 7 pursuant to § 1307(a), such conversion will be effective upon its filing pursuant to Rule 1017(f)(3), and the judgment for dismissal of the Chapter 13 case will be of no further effect. If the motion is for conversion to Chapter 11, the Court will set a hearing on it on notice to all parties in interest pursuant to § 1307(d), in which event the judgment for dismissal of the Chapter 13 case will be further stayed until entry of an order on the Debtor's motion for conversion to Chapter 11.

---

**2.** The Seventh Circuit also included the specific language used by the state court:

> The [state] court ordered that "[t]he Petitioner herein [Ms. Farrey] shall have a lien against the real estate property of the Respondent for the total amount of money due her pursuant to this Order of the Court, i.e. $29,208.44, and the lien shall remain attached to the real estate property of the Respondent until the total amount of money is paid in full." R.14 Ex.B at 14.

899 F.2d at 599 n. 2.